**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 7 |
| Education Management Corporation,<br>The New England Institute of Art, LLC<br>Debtors. | Case Nos. 18-11500 (LSS)<br>18-11550 (LSS) |
|  | **Objections Due By: August 23, 2018** |
|  | **Hearing Date: August 30, 2018** |

**MOTION OF COMMONWEALTH OF MASSACHUSETTS FOR DETERMINATION
THAT THE AUTOMATIC STAY PROVISION DOES NOT APPLY TO
MASSACHUSETTS' ACTION AGAINST DEBTORS**

The Commonwealth of Massachusetts (the "Commonwealth") respectfully requests entry of an order pursuant to section 362(b)(4) of title 11 of the United States Code (the "Bankruptcy Code") confirming that the automatic stay does not apply to the action *Commonwealth of Massachusetts v. The New England Institute of Art, LLC & Education Management Corporation*, No. 18-2356H (Super. Ct. filed July 30, 2018) (the "Enforcement Action"). A copy of the complaint in the Enforcement Action is attached as Exhibit "A" hereto.

Jurisdiction and Venue

The Court has jurisdiction to consider this motion under 28 U.S.C. §§ 157 and 1334, and venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are Bankruptcy Code sections 105 and 362.

The Enforcement Action

The Enforcement Action was brought under Massachusetts consumer protection law, M.G.L. c. 93A, § 4.  Massachusetts filed the Enforcement Action on July 30, 2018, in Suffolk Superior Court.[1]

The New England Institute of Art ("NEIA") operated as a for-profit art school in Brookline, Massachusetts for many years, before ceasing enrollment and winding down its operations.  The Commonwealth, in the Enforcement Action, alleges that ("NEIA") and Education Management Corporation ("EDMC" and collectively with NEIA, the "Defendants"), which owned NEIA, committed unfair or deceptive and/or fraudulent practices in Massachusetts by:

- misrepresenting NEIA's "in field" job placement rates to prospective and current students;[2]
- misleading students and prospective students about the assistance that NEIA would provide graduating students in finding a job;
- relentlessly contacting prospective students to enroll at NEIA;
- falsely representing NEIA's selectivity;
- misrepresenting the availability of financial aid; and
- incorrectly billing students.

---

[1] The Commonwealth filed the Enforcement Action before filing this Motion because the Commonwealth and NEIA had entered into a number of tolling agreements (collectively, the "Tolls"), prior to the Petition Date.  Under the Tolls, Massachusetts had to file an action by July 30, 2018 or potentially be unable to proceed against NEIA for years of alleged consumer protection violations. The Commonwealth has not served the trustee administering the debtors' estates with a copy of the complaint in the Enforcement Action (service would start the litigation responsibilities for the trustee) and will voluntarily refrain from serving the trustee for the period allowed under Massachusetts Rules of Civil procedure to allow this court to rule on this Motion until the court rules on this Motion.

[2] EDMC closely controlled and audited how NEIA calculated and represented its job placement rates.

As a result of the Defendants' myriad misrepresentations, many of the students who attended NEIA incurred thousands of dollars in debt from institutional, private, and federal sources (collectively, the "Student Loans"). In some cases, individual students incurred more than $100,000 in debt to complete their studies at NEIA. Many of the students misled and deceived by NEIA have been unable to obtain sustainable employment related to their fields of study, and are having difficulty making payments on their Student Loans. One student reported feeling "scammed and cheated" by the school, adding "I feel like a prisoner to my six-figure debt." Exhibit A, ¶ 6. Another student stated that while she was initially "intrigued by [the school's] high statistics of job placement post-graduation," these statistics "turned out to be grossly exaggerated." She added, "This place is/was a crock. My 20-year old self was manipulated by grandiose promises that were nothing but lies. I am now the owner of a $60,000 piece of paper." Id., ¶ 7.

### UNDER SECTION 362 THE AUTOMATIC STAY DOES NOT APPLY TO THE ENFORCEMENT ACTION

The automatic stay imposed by the section 362(a) of the Bankruptcy Code does not bar "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power." 11 U.S.C § 362(b)(4) (the "Police and Regulatory Exception"). The Third Circuit determined that the Police and Regulatory Exception applies to cases "'where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or *attempting to fix damages for violation*

3

*of such a law,* the action or proceeding is not stayed under the automatic stay.'" *United States v. Nicolet, Inc.*, 857 F. 2d 202, 208 (3d Cir. 1988) (citations omitted; emphasis in case). "As characterized by the Third Circuit in *Nicolet,* these provisions embody Congress' recognition that enforcement of actions to protect the public health and safety 'merits a higher priority than the debtor's rights to a "cease fire" or the creditors' rights to an orderly administration of the estate.'" *Consumer Prot. Div. v. Nanticoke Homes, Inc.*, 2003 WL 22287387, *2 (D. Del. September 30, 2003).

The Third Circuit has determined that the Police and Regulatory Exception applies to government actions when the action satisfies the pecuniary purpose test or the public purpose test. *See In re Nortel Networks, Inc.*, 669 F.3d 128, 139-140 (3d Cir. 2011).

The pecuniary purpose test asks whether the government primarily seeks to protect a pecuniary governmental interest in the debtor's [*140] property, as opposed to protecting the public safety and health. The public policy test asks whether the government is effectuating public policy rather than adjudicating private rights. If the purpose of the law is to promote public safety and welfare or to effectuate public policy, then the exception to the automatic stay applies. If, on the other hand, the purpose of the law is to protect the government's pecuniary interest in the debtor's property or primarily to adjudicate private rights, then the exception is inapplicable.

*Id.*

Numerous courts, from within the Third Circuit and elsewhere, have found that the Police and Regulatory Exception expressly applies to consumer protection actions brought by governments, including actions seeking restitution and penalties. *See, e.g.*, *Consumer Prot. Div. v. Nanticoke Homes, Inc.*, 2003 WL 22287387, *2 (D. Del. September 30, 2003) (finding that the state of Maryland's consumer protection action was related to public safety and welfare and was intended to effectuate public policy, and not intended to protect the government's interest in the debtor's property); *Massachusetts v. First Alliance Mortg. Co. (In re First Alliance Mortg. Co.)*, 263 B.R. 99, 108 (B.A.P. 9th Cir. 2001) ("From legislative history and case law, it is well-established that consumer protection is a valid exercise of the police and regulatory power for

4

purposes of § 362(b)(4)."); *In re Dolen*, 265 B.R. 471, 481 (Bankr. M.D. Fla. 2001) (holding that automatic stay did not preclude Federal Trade Commission from proceeding to trial against debtor to obtain an adjudication of its claims on the merits, and fixing restitution award).

In *First Alliance*, the Bankruptcy Appellate Panel for the Ninth Circuit determined that the Police and Regulatory Exception allowed the Commonwealth to proceed on its complaint in state court despite the fact that First Alliance had ceased its loan origination business. The Ninth Circuit BAP reasoned that civil penalties imposed for consumer fraud met both the pecuniary purpose test and the public policy test and that it was not the Bankruptcy Court's role to determine whether the government's exercise of police or regulatory power was legitimate. *First Alliance*, 263 B.R. at 109. With respect to the restitution claims, the Court analyzed the pecuniary interest and public purpose tests and found that "the Commonwealth's money claims, which are part of the totality of its consumer protection remedies are for a public purpose, and not solely for the pecuniary gain to the Commonwealth or its individual citizens." *Id*., at 111.

The Police and Regulatory Exception exempts the Enforcement Action from automatic stay. The purpose of M.G.L. c. 93A is to protect Massachusetts consumers from unfair or deceptive acts and practices. M.G.L. c. 93A, § 2. The Commonwealth brought the Enforcement Action to enjoin the collection of illegal debts and loans, obtain restitution for deceived students, and deter other perpetrators of unfair and deceptive acts. The Enforcement Action also will not increase the Commonwealth's interest in the estates' property; any monetary judgment that the Commonwealth acquires against the Defendants in the Enforcement Action will be treated as a claim in this Court.

Establishing the Defendants' liability through the Enforcement Action is also critically important to the Commonwealth's efforts to aid the students deceived by the Defendants. While

the Defendants have ceased operations and no longer educate students in the Commonwealth, the Student Loans that students (and their parents) took out based on the Defendants' misrepresentations and false statements continue to burden borrowers. Establishing the Defendants' liability in the Enforcement Action may allow the Commonwealth to challenge the collection of some or all of these Student Loans and help NEIA's former students escape their burdensome debt.[3] *See* 16 C.F.R. § 433, "The Holder in Due Course Rule," which allows consumers to assert the same legal claims and defenses against anyone who purchases a credit contract as they would have against the seller who originally provided the credit. Also, as it did previously in *Commonwealth v. Corinthian*, discussed *supra* note 3, the Commonwealth may be able to use a Superior Court judgment to help student borrowers obtain discharges of their Federal Direct student loans. *See* 34 CFR 685.206(c), "Borrower Defenses."

In bringing the Enforcement Action, the Attorney General is seeking to protect the citizens of Massachusetts and remedy the wrongs that she alleges that the Defendants perpetrated.

---

[3] In 2014, the Commonwealth filed suit against Corinthian Colleges, Inc., which had operated for-profit schools in Massachusetts, alleging, *inter alia*, unfair and deceptive acts and practices in the recruitment of students. In 2015, Corinthian filed for bankruptcy. In June 2016, the Superior Court of Massachusetts allowed the Commonwealth's summary judgment motion as to Corinthian's liability for the Commonwealth's claims. The Superior Court entered final judgment for the Commonwealth, ordering restitution for tuition paid by Massachusetts students. With the finding of liability against Corinthian, the Commonwealth was able to obtain Assurances of Discontinuance with the holders of Corinthian private loans and institutional debt, resulting in the cessation of collection efforts and discharge the debts, as well as the return of certain payments made by students. (*See Commonwealth of Massachusetts v. Jefferson Capital* 17-84CV02318, *Commonwealth of Massachusetts v. Aequitas Capital Management Inc*. 18-84CV01939, *Commonwealth of Massachusetts v. Williams, Rush & Associates LLC* 16-84CV03026). The liability finding against Corinthian also provided a stronger basis for former students who were seeking discharge of their federal student loans under the borrower defense to repayment rule.

## **CONCLUSION**

The automatic stay does not apply to the Enforcement Action. The Commonwealth respectfully requests that the Court enter an order granting this motion.

Dated: August 3, 2018

                              COMMONWEALTH OF MASSACHUSETTS
                              MAURA HEALEY
                              MASSACHUSETTS ATTORNEY GENERAL

                              By: */s/ Michael Sugar*
                              Michael Sugar, BBO #683901
                              Claire Masinton, BBO #646718
                              Glenn Kaplan, BBO #567308

                              Assistant Attorneys General
                              Office of the Attorney General
                              One Ashburton Place, 18th Floor
                              Boston, MA 02108
                              (617) 727-2200
                              Fax: 617-722-0184
                              michael.sugar@state.ma.us
                              claire.masinton@state.ma.us
                              glenn.kaplan@state.ma.us